**Dated: March 5, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| White Star Petroleum Holdings, LLC, ) | Case No. 19-12521-JDL |
| *et al.*, ) | Ch.11 |
| Debtors. ) | Jointly Administered |
| ) | |
| White Star Petroleum, LLC and ) | |
| White Star Petroleum II, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary No. 19-01115-JDL |
| ) | |
| MUFG Union Bank, N.A.; AG & Oil ) | |
| Field, LLC, et al. ) | |
| ) | |
| Defendants. ) | |

### ORDER GRANTING IN PART, DENYING IN PART AND TAKING UNDER
### ADVISEMENT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On February 13, 2020, the Court conducted a hearing on the *Motion for Partial Summary Judgment* filed by Plaintiffs' White Star Petroleum, LLC and White Star Petroleum II, LLC ("White Star") (the "Motion") [Adv. Doc. 276]. The Court received one Response supporting the Motion and thirty five (35) Objections/Responses to the Motion

filed by the Defendants representing fifty-seven (57) Mechanics & Material lien claimants. White Star brings the Motion pursuant to Fed.R.Civ.P. 56(a), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7056, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Fed.R.Bankr.P. 7001(9) which allows a court to grant declaratory relief to parties "in a case of actual controversy within its jurisdiction."  28 U.S.C. § 2201(a).

As an initial matter, the Court finds that the Motion, while unique in the sense that it seeks merely to establish the issues of law which are to govern this adversary proceeding, is not seeking an "advisory opinion."  It is fundamental that federal courts do not render advisory opinions. They are limited to deciding issues and actual cases and controversies and not determining matters of a hypothetical character or one that is academic. *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956 (1969);  U.S. Constitution, Art. III, Sec. 1 *et. seq.*; *Columbian Financial Corp. v. BancInsure,* 650 F.3d 1372, 1376 (10th Cir. 2011) ("It is not the role of federal courts to resolve abstract issues of law.  Rather, they are to review disputes arising out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties.").  The Court finds, as is evidenced by the numerous objections, that White Star's Motion is anything but hypothetical or academic.  The issues presented by the Motion and the Objections clearly demonstrate that there is a ripe, justiciable controversy over the entitlement to White Star's sale proceeds amongst its lenders and the M&M lien claimants. This is one of those situations in which a declaratory judgment "may be limited" and "further necessary and proper relief based upon factual disputes not yet resolved may be sought at a later time," to entirely dispose of the matter. *Kunkel v. Continental Casualty Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989).

Upon hearing the arguments of counsel both in support of the Motion and in opposition to the Motion, and for the reasons stated on the record in open court which are incorporated herein by reference, the Court finds as follows with regard to the three (3) issues asserted by Plaintiffs in their Motion:

> **Issue 1. The scope and limitations of the trust funds established by Title 42 O.S. § 144.2 entitled "Creation and Appropriation of Trust Funds for Payment of Lienable Claims."**

Plaintiffs seek a declaration that by virtue of the express language and plain meaning under the rules of statutory construction, § 144.2 is only applicable to joint interest payments received and held on a well-by-well basis, and does not apply to the Contango sale proceeds or proceeds from the sale of oil and gas. Conversely, Defendants assert that by virtue of the rules of statutory construction and legislative intent, § 144.2 is applicable to, and makes trust funds of, all lienable claims due and owing by the oil and gas operator, including mechanics and materialmen's liens.

White Star and all objecting M&M lien claimants have stated in open court that there is no definitive Oklahoma authority determining whether § 144.2 applies only to working interest owners as contended by Plaintiffs or to mechanics and materialman's liens as contended by the M&M claimants. Under the Revised Uniform Certification of Questions of Law Act, Title 20 O.S. §§ 1601 *et seq.*, the Oklahoma Supreme Court may answer a question of law certified to it by a court of the United States if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of the state in question. 20 O.S. § 1602. This is particularly true, as in this case, when the issue is one of

3

significant public importance to a major industry such as oil and gas. Although the parties did not request certification, the Court is empowered to seek certification *sua sponte.* See *e.g. Easthampton Savings Bank v. City of Springfield,* 736 F.3d 46 (1st Cir. 2013).

The Court will therefore take the Motion as to Issue 1 under advisement pending the Oklahoma Supreme Court's opinion on, or its denial of accepting, the Certified Question. The Parties were permitted ten (10) days from the hearing date to provide to the Court what they believe should be the question of law to be answered by the Certified Question as well as the facts relevant to the question, showing fully the nature of the controversy out of which the question arises. 20 O.S. § 1604. The Court will by separate Order certify the question to the Oklahoma Supreme Court upon review of the parties submissions.

### Issue 2. Valid Liens of White Star's Lenders Have Priority Over Later in Time M&M Liens.

White Star's Motion seeks a declaration that valid and perfected mortgage liens or security interests of its lenders have priority over later in time M&M liens. In White Star's own words, it "seeks a *legal* determination that the priority of M&M liens relative to other liens may be determined based on the 'date of the furnishing of the first item of material and the date of performance of the first labor' by the M&M lien claimant." [Reply, Doc. 360 ¶ 33].[1]

The Court finds that White Star's statement of the law may be somewhat incomplete. "First in time-first in priority" in the determination of lien priorities is a general

---

[1] White Star "is not at this time requesting the court enter summary judgment with respect to the validity of any RBL Lien or to declare any specific M&M Lien junior or senior to the RBL Liens. *Id*.

statement of the law which may or may not be determinative of priority in all situations. The "first in time" lien is still subject to the requirement that it be "valid" in the sense that the mortgagee's lien must contain the proper description of the property interest which is covered by the mortgage so as to give sufficient constructive notice, that it be filed in the appropriate place for such property interest and whether the mortgage documents make subsequent advances thereunder obligatory or discretionary. See, 16 O.S. §§ 15 & 16 (no mortgage relating to real property shall be valid as to third persons unless acknowledged and recorded); *Berryman v. Producers Corp. of Nevada*, 240 P.2d 1111 (Okla. 1952) (recording in office of the County Clerk of county in which land is situated, constitutes constructive notice to all subsequent purchasers); *Amarex, Inc. v. El Paso Natural Gas Co.*, 772 P.2d 905 (Okla. 1987) (mortgages must be executed and acknowledged, in compliance with the provisions of 16 O.S. (1981) § 26, and then filed in the real estate records of the county where the land lies.); *Liberty Nat'l Bank & Trust Co. of Oklahoma City v. Kaibab Industries, Inc.,* 591 P.2d 692 (Okla. 1978) (for mortgage lien to be superior to materialman's lien claimants, advances under mortgage lien must be obligatory on lender rather than permissive).

The Court **Grants in Part and Denies in Part** White Star's Motion as to Issue 2 with modification of the Issue to be: "The priority between the lien(s) of White Star's secured lenders and M&M liens depends upon several factors, including the validity of such mortgage and M&M liens, the first-in-time of such mortgage and liens, the terms of such mortgage(s) and M&M liens, the proper description of the property interest purportedly subject to such mortgage(s) and liens, the proper place of filing of such liens and whether

subsequent advances under the mortgage documents were obligatory or discretionary." Nothing contained in this Court's Order is deemed to limit the right of either White Star, its secured lenders or the M&M lien claimants from conducting discovery to determine facts relevant to the determination of the lien priorities between and amongst them.[2]

### Issue 3. Any Secured Claim Recovery on an M&M Lien is Limited to the Relevant Allocated Purchase Price.

White Star argues that each M&M lien created by 42 O.S. § 144 which is entitled to senior priority be limited to no more than the "Allocated Purchase Price" on the applicable well or wells securing the M&M lien. The Allocated Purchase Price was established by Section 6.10 of the Asset Purchase Agreement filed with the Court.[3] The Gross Allocated Purchase Price was adjusted downward on a well-by-well basis for unpaid royalties controlled by White Star and held in suspense for obligations which were assumed by the purchaser, Contango.

The Court finds that the Contango Allocated Purchase Price on a well-by-well value should not, at least not at this point in the litigation, be binding on the M&M lien creditors because valuation is a fact question, and no discovery has been conducted or evidence presented as to how those determinations were made. The Court recognizes that appointing an expert, examiner or conducting discovery as to each of approximate 2000

---

[2] In oral argument and in its Motion White Star "made clear that White Star is not requesting in the Motion that the court determine the priority of any M&M lien vis-à-vis the applicable (secured lenders) lien. Despite suggestions to the contrary from certain objectors, the facts regarding whether each (lenders) lien is valid and perfected are not at issue at this stage of the adversary proceeding." [Motion, Doc. 360, ¶ 39].

[3] *Notice of Contango Oil and Gas Co. Transaction Documents* [Case No. 19-12521, Doc. 655, Ex. D., pg. 380].

wells against which there are approximately seventy (70) M&M claimants may well be, as contended by White Star, a prohibitively expensive undertaking. At the same time however, due process, transparency and simple fairness requires some proof as to how these valuations which were arbitrarily, or at least unilaterally, arrived at so as to be binding upon the M&M lien claimants. The Court would encourage all parties to attempt to reach agreement on some sort of expedited process to determine the basis of the valuation of the wells as set forth in the Allocated Purchase Price.

Accordingly, White Star's Motion for Summary Judgment as regards to Issue 3 is hereby **Denied.**

### #